**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JANET OLIVER,                                          Case No. 1:12-cv-252

                    Plaintiff,                          Dlott, J.

     v.                                                   Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.


**REPORT AND RECOMMENDATION**

Plaintiff Janet Oliver filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. As explained below, the ALJ's finding of non-disability should be **AFFIRMED**, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed applications for disability insurance benefits ("DIB") and for Supplemental Security Income ("SSI") in April 2008, alleging a disability onset date of April 30, 2007 due to a combination of physical and mental impairments. After her applications were denied initially and on reconsideration, she requested a hearing de novo before an Administrative Law Judge ("ALJ"). On May 20, 2010, an evidentiary hearing was held before ALJ Larry A. Temin. Plaintiff appeared with counsel and

provided testimony; a vocational expert also provided testimony.  (Tr. 36-75).  On July 12, 2010, the ALJ denied Plaintiff's application in a written decision.  (Tr. 6-27).

Plaintiff's last insured date was December 31, 2008.  In order to be eligible for DIB (not SSI), she must show that she became disabled on or before that date.  The record reflects that Plaintiff was 49 years old on her alleged disability onset date, but had turned 50 by the date she was last insured.  She was categorized as an individual "closely approaching advanced age" at the time of the ALJ's decision.  (Tr. 25).

Plaintiff had performed no substantial gainful activity between her claimed onset date in April, 2007 through the date last insured.  (Tr. 11).  The ALJ determined that Plaintiff had the following severe impairments:  lumbar spine degenerative disc disease/facet degenerative changes; bilateral knee osteoarthritis status post arthroscopic surgeries on both knees; asthma/allergic rhinitis/chronic obstructive pulmonary disease (COPD); obesity; hypothyroidism and a history of lymphocytic thyroiditis; and an affective disorder.  (Tr. 11-12).  However, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 17).

Plaintiff stands at 5 foot 5 inches, and is morbidly obese, weighing 250 pounds. Previously at her administrative hearing and now in this proceeding, Plaintiff contends that the primary reason she cannot work is due to back pain.  (Tr. 45-46).  However, the ALJ determined that Plaintiff retained the residual functional capacity to perform a limited range of light work, described as follows:

> She can lift and/or carry no more than 20 pounds occasionally and 10 pounds frequently; stand and/or walk for a total of 6 hours in an 8-hour workday; and sit for a total of 6 hours in an 8-hour workday.  She can only occasionally stoop, kneel, crouch, or climb ramps and stairs.  She cannot crawl, climb ladders, ropes or scaffolds, or work at unprotected heights or around hazardous machinery.  She should avoid concentrated exposure to extreme cold, extreme heat, or flames, noxious odors, dusts or gases.  Due to her mental impairments, she is able to remember and carry out detailed but uninvolved instructions.  She is limited to work that does not require more than ordinary and routine changes in work setting or duties with no complex work-related decisions.

(Tr. 19).  Based upon the testimony of the vocational expert, the ALJ found that Plaintiff could perform her past relevant work as a general office clerk.  (Tr. 25).  In the alternative, the ALJ found that Plaintiff could perform additional jobs that exist in significant numbers in the national economy, based upon her age, education, work experience, and RFC.  (*Id.*).  For those reasons, the ALJ determined that Plaintiff was not under a disability.  (Tr. 27).

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff contends that the ALJ erred (1) by failing to give controlling weight to the opinions of two treating physicians; and (2) by giving only "some" weight to the opinion of a consulting psychologist.

**II.  Analysis**

**A.  Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  See 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are

3

both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial

4

gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

### B.  Plaintiff's Statement of Errors

In this case, Plaintiff asserts that the ALJ erred: (1) by failing to give controlling weight to two treating physicians, both of whom offered opinions that supported a disability finding; and (2) by giving inadequate weight to a consulting psychologist regarding Plaintiff's mental limitations.   The asserted errors impact both Steps 4 and 5 of the sequential analysis.

### 1.  The Weight Provided to a Treating Physician

The relevant regulation concerning the opinions of treating physicians, 20 C.F.R. §404.1527(c)(2), provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  *Id.; see also Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The treating physician

rule requires "the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians."   *See Blakley v. Com'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009).

The reasoning behind the rule has been stated as follows:

[T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Com'r of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)).

Despite the presumptive weight given to the opinions of the treating physician, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight.  Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996).  In such cases, the ALJ should review additional factors to determine how much weight should be afforded to the opinion, such as "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406; *see also* 20 C.F.R. §404.1527(c)(2).

When the treating physician's opinion is not given controlling weight, the ALJ must provide "good reasons" for doing so.  *Id.*  Good reasons "must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley*, 581 F.3d at 406-407; *see also* Soc. Sec. Rul. 96-2p.  An ALJ's failure to provide an adequate explanation for according less than controlling weight to a treating source may only be excused if the error is harmless or de minimis, such as where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Blakley*, 581 F.3d at 409 (quoting *Wilson*, 378 F.3d at 547).

### a.  Dr. Chatman

Dr. Robyn Chatman is Plaintiff's primary care physician, and has treated Plaintiff since 2000 for virtually all of the ailments that the ALJ found to be "severe" under Step 2 of the sequential analysis.  In January 2006, 19 months prior to Plaintiff's disability onset date of August 2007, Dr. Chatman completed a basic medical form for the Department of Job and Family Services in order to assist Plaintiff in obtaining a medical card.  At that time, Dr. Chatman opined that Plaintiff was extremely limited in her physical abilities.  She opined that Plaintiff was limited to standing/walking less than 2 hours in a workday, or only a half hour without interruption.  Dr. Chatman stated that Plaintiff could sit not more than 2-3 hours per day, and checked boxes indicating that Plaintiff could lift only up to 5 pounds frequently, and not more than 6 to 10 pounds occasionally.  (Tr. 791).  In addition, Dr. Chatman opined that Plaintiff was extremely limited in pushing/pulling and bending, markedly limited in reaching and handling, and moderately limited in repetitive foot movements.  (*Id.*).  Despite these limitations, Dr. Chatman reported that Plaintiff was "employable."  (*Id.*).

7

The ALJ rejected most of Dr. Chatman's extreme physical limitations in calculating Plaintiff's RFC.  In explaining that Dr. Chatman's January 2006 opinions were entitled to "little weight," the ALJ stated:

> In the assessment, Dr. Chatman essentially opined that the claimant was capable of performing substantially less than the full range of sedentary work, including sitting, standing, and walking for a total of no more than 5 hour[s] in an 8-hour workday. (*Id.*).  On the other hand, Dr. Chatman also indicated that the claimant was still employable.  …  However … the objective medical evidence does not support this assessment.  Moreover, this assessment was completed over 18 months before the claimant's alleged onset of disability…[and] precedes claimant's alleged onset date.

(Tr. 23).

In lieu of adopting Dr. Chatman's opinions into Plaintiff's RFC, the ALJ relied upon the concurring assessments formulated by three consulting physicians, dated April 2006, November 2007, and February 2009.  Plaintiff asserts that the ALJ erred in doing so.  However, the mere fact that an ALJ has rejected the opinion of a treating physician in favor of the opinion of a consulting physician is not error, if the treating physician's opinion was not "well supported," and so long as the ALJ has complied with applicable regulations and offered "good reasons" for his decision.

In support of her claim of error, Plaintiff points to a list of symptoms found by Dr. Chatman over the years.  However, a list of symptoms noted by Dr. Chatman during various clinical examinations does not mandate – or even necessarily support - a conclusion that Plaintiff has the degree of physical limitations assessed by Dr. Chatman.  Turning to Plaintiff's primary focus, her back pain, the ALJ pointed out that Plaintiff's

complaints of disabling pain and radiculopathy were not supported by diagnostic imaging, which showed only minimal disc changes (Tr. 22, 740).

Plaintiff protests that Dr. Chatman's 2006 opinions find support in a May 2008 MRI study.[1]  The ALJ described the 2008 MRI as documenting "minimal disc bulging" at L3-L5 "without significant thecal sac or neuroforaminal compromise."  (Tr. 740).  The ALJ did not specifically discuss the finding of "posterior disc bulging with slight effacement of the ventral sac" in the L5-S1 area, including "marked bilateral ligamentum flavum hypertrophy and severe bilateral facet hypertrophic degenerative spurring," resulting in "moderate left neuroforaminal encroachment and mild right neuroforaminal narrowing."  (Id.).  Instead of specific discussion, the ALJ only alluded to the finding at L4-S1 of "facet degenerative changes."  (Tr. 13).  Even with the addition of neuroforaminal encroachment at L5-S1, however, the conclusion of the 2008 report – which the ALJ did specifically discuss- was that Plaintiff suffers from no more than "mild-to-moderate DDD."  (Id.; Tr. 13, 24).

As the ALJ noted, Plaintiff's electrodiagnostic study contradicted her reports of radiculopathy, as there was no evidence of either radiculopathy or neuropathy.  (Tr. 22, 422).  Plaintiff's testimony that she could not work due to back pan and "sciatica" was further undercut by the absence of any records showing a diagnosis of sciatica.

Moreover, shortly after Dr. Chatman opined that Plaintiff was severely restricted in 2006, Dr. Glaser performed a consulting examination of Plaintiff.  Dr. Glaser noted

---

[1]Obviously, Dr. Chatman did not have access to the 2008 study at the time she rendered her opinions.

that Plaintiff walked with a normal gait, was comfortable in both sitting and standing positions and that the studies of her spine were within normal limits. (Tr. 23, 573-574). Even after Plaintiff's insured status had expired in 2009, a second consulting examining physician, Dr. Bailey, found that flexion, extension and rotation studies of Plaintiff's spine were within normal limits, there was no evidence of radiculopathy or muscle spasm, and that Plaintiff walked with a normal gait. (Tr. 23, 716-717). The referenced evidence provides strong support for the ALJ's rejection of Dr. Chatman's 2006 opinions as not well supported, and as in conflict with the "objective medical evidence."

Plaintiff protests that Dr. Chatman's extreme limitations are consistent with the records of her treating orthopedist, Dr. Shockley, as well as with the records of her neurologist, Dr. Schmerler. The undersigned does not agree that, to the extent that Dr. Chatman's 2006 opinions can be viewed as "consistent" with the clinical records of Dr. Shockley or Dr. Schmerler, reversal is required. As discussed more extensively below, the ALJ properly discounted the opinions of Dr. Shockley, whose clinical records do not fully support the extreme limitations found by Dr. Chatman. Similarly, Dr. Schmerler's one-time consultation notes from May of 2008 do not fully support the RFC offered by Dr. Chatman. Dr. Schmerler's records primarily reference the basis for referral and Plaintiff's reported history. However, his physical examination found that, despite some diminished reflexes in arms and knees, Plaintiff's straight leg test was "unremarkable." (Tr. 737). He recommended the 2008 MRI to help assess the basis for Plaintiff's reported pain, but also noted that Plaintiff's gait was "[f]airly good." (*Id.*).

10

Apart from the very limited consistency of Dr. Chatman's opinions with the records of Drs. Shockley and Schmerler, Dr. Chatman's 2006 opinions were inconsistent with the record as a whole, including Plaintiff's own testimony concerning her limitations. In addition, opining that Plaintiff was "employable" while imposing physical limitations that precluded full-time work rendered Dr. Chatman's opinions internally inconsistent. Plaintiff complains that the ALJ should not have discounted Dr. Chatman's assessment merely because it was made before her disability onset date. But in January 2006, Plaintiff was working 30-35 hours per week, relatively close to a full-time schedule. (Tr. 43).  Plaintiff does not claim to have been disabled until 19 months after Dr. Chatman rendered her "disabling" RFC opinions.  Additionally, Plaintiff testified that she can lift 10-20 pounds and exercises with weights – directly contradicting Dr. Chatman's opinions that she could lift only 5 pounds frequently, and only up to 10 pounds "occasionally."  (Tr. 49, 791).

Plaintiff contends that Dr. Chatman's report should be considered to the extent that her condition worsened over time.  However, Plaintiff's argument that Dr. Chatman's opinions somehow gained validity over time does not render them valid when rendered.  Moreover, substantial evidence in the record including objective medical studies and relevant clinical records support a conclusion that Plaintiff's back condition was chronic and relatively stable, but not disabling.

Plaintiff also points to an April 2008 note wherein Dr. Chatman noted a lumbar "herniated" disc, asthma, hypothyroid, and depression.  (Tr. 784).  However, the ALJ correctly pointed out that contrary to Dr. Chatman's reference to herniation or rupture of

11

the disc, diagnostic studies showed only disc "bulging." Neither a 2002 MRI, nor a 2007 x-ray, nor the 2008 MRI showed herniation. Thus, the ALJ did not err in concluding that the record did not support the degree of physical limitations offered by Dr. Chatman in 2006.

Finally, Plaintiff contends that Dr. Chatman's opinion that Plaintiff was "employable" in 2006 does not undermine her RFC opinions, because she may have intended to reference Plaintiff's part-time employment. However, the physical restrictions that Dr. Chatman imposed would have precluded even the part-time employment she then held. She testified that she worked approximately 35 hours per week, a presumed average of 7 hours per day, but Dr. Chatman's opinions would have precluded her from working more than 5 hours per day.

**2. Treating Physician Dr. Shockley**

Dr. Shockley, an orthopedist, has treated Plaintiff since 2003, initially pre and post knee surgery. He treated Plaintiff briefly for back pain in 2004, but began treating Plaintiff more regularly for her chronic back pain in 2007, seeing her six times in that year, seven times in 2008, and four times in 2009. In August 2009, Dr. Shockley recommended chiropractic treatment. (Tr. 752-56).

At her first 2007 visit in May, her exam was essentially normal, with no evidence of tension signs or straight leg raising, no atrophy, normal motor strength, no weakness, and normal heel and toe walk. Dr. Shockley recommended only an exercise program. (Tr. 619-620). In July 2007, Dr. Schockley gave Plaintiff an intramuscular injection (Tr. 618). Plaintiff returned in August and November, continuing to complain of pain with

activity.  (Tr. 617).  Dr. Shockley noted that she reported severe pain at work, and stated that "if she can potentially get *temporary* disability I would support that effort." (*Id.*, emphasis added).  In context, the August 2007 notation does not represent any opinion concerning whether Plaintiff would be permanently disabled (for 12 months or more).  Subsequently, Dr. Shockley prescribed injections, pain medication, and a back brace.  While Plaintiff continued to complain of pain, Dr. Shockley noted that Plaintiff's "motion is still good even in the brace."  (Tr. 670).  In December 2007, Dr. Shockley noted that the brace "does help" despite complaints of significant pain with standing. (Tr. 669).

In February 2008, Dr. Shockley recorded Plaintiff's complaints of back pain radiating into her legs, with numbness and tingling upon prolonged standing.  (Tr. 668). His clinical note from that date reflects concern about obtaining a follow-up MRI and possible repeat EMG, in light of Plaintiff's lack of insurance to pay for diagnostic testing. It was in that context that he wrote: "[U]nfortunately she does not have insurance and not a job yet, so she is trying to get disability, which based on all her orthopedic and medical issues it appears as though she is a candidate for it."  (Tr. 668).

In April 2008, Dr. Shockley noted "[i]t is interesting that she has a pain that after she has been sitting for a while feels better, but after she has been standing for a while she can barely get around."  (Tr. 667).  At that point, Plaintiff could flex her trunk 80 degrees laterally, bend 10 degrees, and extend 5 degrees comfortably.  (*Id.*).  In May 2008, Plaintiff was able to obtain the recommended MRI, which substantiated only mild-to-moderate degenerative disc disease, for which facet joint injections were prescribed.

(Tr. 713, 740).  Plaintiff underwent those injections in June and September 2008.  In October 2008, Plaintiff reported little improvement, and that she was continuing to wear her brace.  (Tr. 711).  She could flex, but had a difficult time getting back to an extended position on clinical exam.  (*Id.*).   Dr. Shockley's note reflects serious concern with Plaintiff's ongoing reported pain level.  "She tried to get disability, but unfortunately she has been denied and she has got severe limitations not only from an orthopedic prospective [sic], but from a medical prospective [sic] as she wears her mask in today to help her with all her pulmonary issues.  …I think once again she is severely limited and is unable to really perform any job at this point because she cannot sit, she cannot stand and she cannot walk for any significant period of time."  (Tr. 711).

At the hearing and before this Court, Plaintiff relies upon all three notes that reference "disability" as support for her contention that Dr. Shockley believed that she was disabled from all work.  However, as stated, the August 2007 notation provides – at most- minimal support for a disability finding.   In August 2007, no significant abnormalities had been noted on clinical examination, Plaintiff had undergone relatively modest treatment, and Dr. Shockley referred only to "temporary" disability.

The February 2008 and October 2008 clinical notes of Dr. Shockley provide slightly stronger support for Plaintiff's claim of disability.  However, both appear to focus, at least partially, upon Plaintiff's pulmonary and other medical issues unrelated to her back pain.  The ALJ concluded that none of Dr. Shockley's three "disability" notes were "supported by objective medical evidence."

14

> For example, diagnostic imaging has essentially shown only mild degenerative disc disease with no evidence of radiculopathy, despite the claimant's allegations.  The most recent MRI of the claimant's lumbar spine showed only mild-to-moderate degenerative disc disease…Additionally, …objective medical evidence does not support the alleged severity of the claimant's respiratory condition.  Furthermore, the record does not support a finding that Dr. Shockley is qualified to offer an opinion about the claimant's employability, and his opinion that the claimant is incapable of performing gainful employment is a conclusion left to the commissioner.

(Tr. 24).  Although Plaintiff criticizes the ALJ's last statement, regulations and case law make clear that the ultimate issue of whether or not Plaintiff is disabled is reserved to the Commissioner.  *See* 20 C.F.R. §404.1527(d)(1); *Allen v. Com'r of Social Sec.*, 561 F.3d 646, 652 (6th Cir. 2009).

Plaintiff also argues that the ALJ erred in focusing on diagnostic evidence rather than on Dr. Shockley's clinical exam findings. At various times over the years, Dr. Shockley noted symptoms including a decrease in Plaintiff's range of motion, pain, tenderness, leg and intermittent foot numbness, and muscle spasms.  During one exam, Plaintiff laid on the floor because that was the most comfortable position for her.  (Tr. 671).  Dr. Shockley also noted Plaintiff's use of a rolling walker, although Plaintiff conceded that the walker was not prescribed by any physician, and that she uses it not for assistance in walking so much as for the attached seat.  (Tr. 711, 20).

Notwithstanding the records cited by Plaintiff, which combine all of Plaintiff's symptoms as if simultaneously and consistently presented, Dr. Shockley's records do not fully support a conclusion that Plaintiff is disabled.  The most detailed clinical notes were made at Plaintiff's first visit on May 29, 2007, when Dr. Shockley took careful note

of virtually all "normal" findings. (Tr. 619).  Most of Dr. Shockley's subsequent notes do not contain the same level of detail, but instead rely heavily upon Plaintiff's subjective reports.   While Plaintiff consistently reports pain, Dr. Shockley's records vary in recording the nature and degree of Plaintiff's symptoms.  For example, a number of records focus on Plaintiff's complaints with activity, and/or with prolonged standing (not sitting).  As referenced, one of the notes reflects decreased pain with prolonged sitting. Another note reports that Plaintiff's motion as "good." (Tr. 670).

The undersigned finds no reversible error in the ALJ's rejection of Dr. Shockley's opinions concerning whether Plaintiff is disabled.  It is clear from the record that Dr. Shockley's opinions were heavily influenced both by Plaintiff's subjective complaints and non-orthopedic issues, including pulmonary issues that the ALJ found to be unsupported by the record.[2]  The ALJ discounted Dr. Shockley's opinions as inconsistent with "objective" evidence, implicitly rejecting Dr. Shockley's reliance on more subjective evidence.  Dr. Shockley noted that Plaintiff's pain is increased with activity (Tr. 617-619), worsens with standing (Tr. 668-669), and affects her activities of daily living (Tr. 618-619, 668).  By contrast, the ALJ found Plaintiff's allegations "of incapacitating discomfort and association functional limitations" to be not fully credible. (Tr. 21).

The ALJ's credibility assessment entitled the ALJ to discount, to some degree, Dr. Shockley's opinions regarding Plaintiff's pain-related limitations.  *See McCoy ex rel*

---

[2]Plaintiff does not contest the ALJ's findings concerning her alleged pulmonary issues.

*McCoy v. Chater,* 81 F.3d 44, 47 (6th Cir. 1995)(ALJ reasonably discounted treating physician's opinion where subjective complaints of disabling back pain were unsupported by objective findings); *Young v. Com'r of Soc. Sec.*, 2011 WL 2923695 at *6 (S.D. Ohio June 20, 2011)(R&R holding that "an ALJ may reasonably conclude that self-reported symptoms are not as reliable as they might be if no credibility issues existed"), adopted 2011 WL 2942983 (July 20, 2011); *Matthews v. Com'r of Soc. Sec.*, 2011 WL 798141, at *8 (S.D. Ohio March 1, 2011)("to the extent that a physician's report is based on a claimant's allegations, it is …insufficient to establish disability"). This is not to say that the ALJ was entitled to ignore more objective clinical findings. However, as discussed, Dr. Shockley's clinical findings were not wholly consistent with his "disability" opinions.

Plaintiff argues that Dr. Shockley's opinions are supported by Dr. Chatman's January 2006 opinion, but consistency with another discredited opinion does not provide evidence of error.  Plaintiff also points to consistency with Dr. Schmerler's records, and chiropractic treatment notes.  However, Dr. Schmerler's consultation notes provided minimal support at most, and more recent chiropractic notes reflect that Plaintiff obtained at least some relief from her pain.  Dr. Glaser's February 2006 consulting examination revealed primarily normal findings, (Tr. 23, 573-574), as did Dr. Bailey's exam in January 2009.  (Tr. 23, 717).  Reviewed on the whole, the clinical records, imaging studies, and other evidence discussed above provide substantial evidence to support the ALJ's rejection of Dr. Shockley's opinions and non-disability determination.

17

Plaintiff argues that the ALJ additionally erred by noting Plaintiff's "relatively conservative treatment for her back condition." (Tr. 22). Plaintiff contends that her lack of insurance made it difficult for her to obtain treatment. Nevertheless, Plaintiff received facet injections, epidural injections, MRIs, EMGs, a neurology evaluation, and chiropractic treatment. Plaintiff does not point to any specific treatment that she did not receive due to a lack of insurance. At times, unrelated to any insurance issue, Plaintiff has been non-compliant with prescribed medications. (Tr. 12). Describing Plaintiff's treatment as "relatively conservative" is not reversible error, considering that Plaintiff has never sought emergency room treatment or been hospitalized for her allegedly disabling back pain.

In sum, it is worth noting that cases like this one, in which a plaintiff claims disability primarily on the basis of subjective complaints of pain, are often difficult. Pain can indeed be disabling. However, even in the closest of cases, a reviewing court must determine not whether it would make the same non-disability determination, or even if substantial evidence exists for a contrary determination. Rather, the court must limit its review to determining whether the decision reached by the Commissioner is supported by substantial evidence in the record as a whole. In this case, the undersigned has no difficulty in answering that question in the affirmative.

### 3. Consulting Psychologists

Although Plaintiff's primary complaints relate to her back pain, she also asserts that her depression contributes to her alleged disability. The ALJ analyzed Plaintiff's psychological complaints as follows:

> As for her alleged mental impairment, at the hearing, the claimant alleged several mental symptoms, but she also acknowledged that she has not received any treatment from a mental health professional since her alleged onset date of disability, August 30, 2007. Moreover, the claimant asserted that Dr. Chatman reported that the claimant's depression was directly linked to her thyroid condition, which supposedly explains why she had not sought mental health counseling. However, as discussed above, Dr. Chatman's treatment notes do not document this depression/thyroid link, but actually [rule] out any organic cause to the claimant's depression… Additionally, the claimant has reported on a number of occasions that her alleged inability to work was largely due to her physical condition and not because of her mental state….

(Tr. 22).

Because Plaintiff has not undergone any treatment from a mental health professional and takes no psychiatric medications, evidence of her mental impairment is limited to notes from her primary care physician, and the assessments of two consulting clinical psychologists. On February 1, 2006, Richard E. Sexton, Ph.D., evaluated the Plaintiff and diagnosed a dysthymic disorder. The ALJ described Dr. Sexton's diagnosis of somatoform disorder as a non-severe impairment because it did not "more than minimally affect the claimant's ability to engage in basic work-related activities." (Tr. 16). In fact, Dr. Sexton opined that Plaintiff was capable of performing simple repetitive-type tasks, and could understand, recall and carry out simple instructions. (Tr. 571). Although he described her ability to tolerate work stress as "fair" depending upon both the level of stress and her "current emotional and physical status," he also noted that she was able to maintain the same level of performance even when "task requirements and instructions became more complicated and challenging." (Tr. 24, 571). In reviewing Dr. Sexton's diagnosis, the ALJ noted that it was made approximately 18

months prior to Plaintiff's alleged onset date, at a time when she was still working.  (*Id*).

"Moreover, no treating psychologist, psychiatrist, or physician has referred to this

disorder, although, Dr. Chatman did mention in October 2008 that the claimant 'seems

to thrive on illness'".  (Tr. 16).  Last, the ALJ pointed out that a later psychological

evaluation of Plaintiff did not reiterate Dr. Sexton's earlier diagnosis.  Based upon the

fact that Dr. Sexton's report of her mental limitations predated Plaintiff's onset date by

18 months, the ALJ gave his opinions only "some weight."

Plaintiff suggests that the ALJ should have given greater weight to Dr. Sexton's

opinion, but fails to explain what additional mental limitations should have been included

but were not.  It appears to this Court that Dr. Sexton's opinions were largely consistent

with the mental limitations found by the ALJ.

Plaintiff spends more time arguing that the ALJ erred in failing to adopt greater

mental limitations from an October 22, 2007 assessment by Jeanne Spadafora, Ph.D.

Based upon her evaluation, Dr. Spadafora diagnosed Plaintiff with a mood disorder due

to a variety of physical conditions.  During the evaluation, Plaintiff reported having

friends at her church, going out every day in order to have contact with others, speaking

with her sister every day, and belonging to a book club.  She did report difficulty with

physical chores and trouble sleeping due to pain, but in terms of her psychological

symptoms, she denied avoiding people and reported daily contact with others.  She told

Dr. Spadafora that she enjoys volunteer activities such as reading to children and the

elderly.  Based partly on Dr. Spadafora's report, the ALJ determined that Plaintiff's

mental impairments did not meet or equal any mental health Listing, because they

20

cause "no more than mild restriction of daily living, no more than mild limitation of social functioning, no more than a moderate restriction of concentration, persistence or pace and no episodes of decompensation." (Tr. 18).

Plaintiff presents no argument concerning the ALJ's conclusion that she does not meet or equal a mental health Listing, at Step 3 of the sequential analysis. However, Plaintiff argues that the ALJ erred at Steps 4 and 5 of the sequential process, by failing to include Dr. Spadafora's opinion that Plaintiff would be "markedly" impaired in her ability to withstand work-related stress. Like the opinion of Dr. Sexton, the ALJ gave only "some weight" to Dr. Spadafora's opinion, specifically rejecting the referenced limitation regarding work-related stress:

> Based on her observations…Dr. Spadafora found no more than mild impairment in the claimant's ability to perform most work-related activities, although, Dr. Spadafora did note marked impairment in the claimant's ability to withstand work-related stress. .. However, as discussed above, the claimant's longitudinal mental [health] treatment history does not support a finding of marked impairment in this area. The record does not document any psychiatric hospitalizations due to stress related symptoms, nor does the record document any decompensations attributable to stress. Therefore, the undersigned has assigned only some weight to Dr. Spadafora's evaluation report.

(Tr. 24). Plaintiff claims that there was no contradictory evidence that Plaintiff has a "marked" impairment in her ability to tolerate work-related stress. However, the ALJ specifically pointed out that Dr. Spadafora's finding of a marked stress tolerance limitation was in conflict with state agency assessments. (Tr. 24, 590-97, 636-653, 672-90). All three consulting psychologists rejected Dr. Spadafora's finding of marked stress tolerance as inconsistent with the record. The additional limitation suggested by Dr.

21

Spadafora also was somewhat in conflict with Dr. Sexton's analysis, and was not supported by Plaintiff's reported activities of daily living.  The ALJ did include several other mental limitations in Plaintiff's RFC, finding that Plaintiff could remember and carry out "detailed but uninvolved instructions," and that she would be limited "to work that does not require more than ordinary and routine changes in work setting or duties with no complex work-related decisions."  (Tr. 19).  Again, on the whole, the undersigned finds no reversible error in the ALJ's failure to include a more specific additional limitation regarding Plaintiff's ability to tolerate work-related stress.

### III.  Conclusion and Recommendation

Accordingly, **IT IS RECOMMENDED THAT** the Commissioner's decision be **AFFIRMED** as supported by substantial evidence, and that this case be closed.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

22

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

JANET OLIVER,                                        Case No. 1:12-cv-252

          Plaintiff,                          Dlott, J.
                                                    Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.


## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).